THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CHEYENNE v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF NORTON.

No. 15,292.   (94 Pac. 278.)

SYLLABUS BY THE COURT.

1. COSTS—*Change of Venue—Criminal Action.* In a criminal case tried in a county to which a change of venue has been granted, where the court in its discretion sequesters the jury from the time they are impaneled until their duties are completed, and where no other jury case is tried at that term, the fees of jurors and of officers summoning the jury and all the necessary expenses incident to the sequestration must be borne by the county where the action was instituted.

2. —— *Action to Recover.* Where in such a case the board of county commissioners of the county in which the trial was had has audited, allowed and paid such fees and expenses it may maintain an action against the other county to recover such proper expenditures.

3. FEES AND SALARIES—*Summoning Jury.* Although in such a case an officer is entitled to no fees for summoning jurors unless he return on the venire the amount of his fees and the items thereof, still, if it be admitted, as between the counties, that no such return was made but that the services were in fact rendered and the fees allowed, were correct in amount, and were paid to the officer, recovery thereof may be had.

Error from Cheyenne district court; CHARLES W. SMITH, judge *pro tem.* Opinion filed January 11, 1908.

Reversed.    Opinion denying a petition for a rehearing
and correcting judgment filed March 7, 1908.

*Josiah Crosby,* county attorney, and *Fred Robertson,*
for plaintiff in error.

*L. H. Thompson,* and *T. M. Noble,* for defendant in
error.

The opinion of the court was delivered by

SMITH, J.: The pertinent facts of this case suffi-
ciently appear in the admission and the stipulation as
to the facts and in the findings of fact and conclusions
of law of the court, which are as follow:

### "ADMISSION.

"It is here admitted that the sheriff of Norton county
served the other twenty-one jurors not admitted in the
agreed statement of facts."

### "AGREED STATEMENT OF FACTS.

"It is hereby stipulated and agreed by and between
the parties hereto that J. T. Renoe, J. F. Kennedy and
G. W. Pippinger were appointed bailiffs and officers of
the court, as alleged in the plaintiff's petition, and per-
formed services as alleged in said petition, for the
number of days as so alleged, and that they filed their
sworn voucher with the clerk of Norton county, Kan-
sas, and the said voucher was audited and allowed by
the board of county commissioners of Norton county,
Kansas, as alleged in said petition, and that warrants
were issued and paid as therein alleged; that their ap-
pointment and qualification were made orally, and they
made no return of their services, except such as ap-
pears upon their vouchers heretofore referred to.

"It is further stipulated and agreed that Eric Ang-
lund and Lew Redd were appointed in writing as dep-
uty sheriffs, and that they performed services as bail-
iffs and officers of the court, as alleged in plaintiff's
petition; that they filed their sworn vouchers with the
clerk of Norton county, Kansas, and that the said
vouchers were audited and allowed by the board of
county commissioners of Norton county, Kansas, and
paid by said Norton county, Kansas, as alleged in plain-
tiff's petition.

"It is further stipulated and agreed that J. T. Bisbee, W. Sarvis, W. R. Garrison, A. L. Lee, J. W. Graves, Amon Butler, I. W. Burgess and Joseph Page were appointed in writing as deputy sheriffs, and that they performed services as such deputy sheriffs, as alleged in plaintiff's petition, and received the pay in the amount and manner therein set forth.

"All the above named being the bailiffs and deputy sheriffs mentioned in the petition.

"It is further agreed that none of said bailiffs and deputy sheriffs ever made any return of the manner of the service in summoning the jurors mentioned in the petition, and never made any statement of their fees for such services, except the statement that they made in the filing of their vouchers and affidavits before the board of county commissioners of Norton county, Kansas, which vouchers and affidavits are statements filed by them with the county clerk for the purpose of receiving compensation for their alleged services.

"It is further agreed that the claims set forth in the causes of action in plaintiff's petition numbered 387, 388, 389, 390, 391, 392 and 393 are for services and supplies which were actually rendered and furnished and paid for as alleged therein, and that a demurrer was sustained thereto by the district court of Cheyenne county, Kansas, upon the 6th day of December, 1905.

"It is further agreed that the warrants referred to in the petition of the plaintiff as having been issued to the various persons for attendance and mileage as jurors were paid by Norton county, Kansas, as therein alleged. This agreement shall be taken as proof only of the fact of the issuance and payment of such warrants.

"This agreement may be used upon the trial of this case as the evidence of the facts herein recited and set forth, subject, however, in every case, to all legal objections that may be made thereto."

### "FINDINGS OF FACT.

"In this case the court finds from the testimony and the admitted statement of facts that some time in the year 1903 a criminal action was begun in Cheyenne county, Kansas, in which Chauncey Dewey and others were charged with the crime of murder, in that they

were charged with the killing of certain persons by the name of Berry.

"The complaint was duly made before a justice of the peace, charging the offense, and upon a preliminary hearing the parties were held without bail to appear before the district court of Cheyenne county, Kansas, to answer the charge of murder, as alleged in such complaint.

"That some time afterward an application by petition was made on the part of the defendants and presented to the district court of Cheyenne county, Kansas, asking that a change of venue of the trial of such action be granted to some other county in this judicial district. The petition was allowed by the court and the case taken for trial to Norton county, Kansas.

"The case came on for trial in Norton county, Kansas, at the regular February term, 1904; that at the beginning of the term several cases were disposed of, after which this criminal case of the State of Kansas against Dewey and others was called for trial, and it became necessary in the view of the court in trying the case that a large number of persons should be drawn and summoned to attend in the trial of that case as jurors and to serve in the trial of the case. The number was something like 373. For the purpose of bringing these persons before the court to serve as jurors in that case several persons were appointed as deputy sheriffs, or bailiffs, or special officers, among whom were J. T. Renoe, J. F. Kennedy, G. W. Pippinger, L. Redd, A. Butler, W. Sarvis, W. R. Garrison, and J. W. Graves.

"J. T. Renoe, J. F. Kennedy and G. W. Pippinger were appointed orally. The other persons were appointed in writing as such special officers. Each duly qualified as such special officer, both to serve papers and also to take charge of the jury under the statute during the progress of the trial of the case.

"Each of the 373 persons heretofore referred to as jurors was duly summoned by these various officers to appear and attend at the sitting of the court as a juror in the trial of said case, and their per diem fees and mileage fees amounted to the total sum of $2762.10.

"Each of said jurors made his statement to the clerk of the district court of Norton county, Kansas, showing the amount of fees, including per diem and mileage, which he was entitled to receive as such juror in

such case, and within ten days after the rising of the court at that term a fee bill was made out by the clerk of said court and transmitted to the county clerk of said county, and by him filed in his office, and afterward such fee bill was allowed in full by the board of county commissioners of said Norton county, Kansas, and it was allowed in the sum of $2762.10, as fees due the persons who were summoned and who attended and served the sitting of the court in the trial of said case.

"That J. T. Renoe, after the adjournment of said court, presented to the board of county commissioners his voucher as such bailiff, deputy sheriff, or special officer, in which he made a claim against said Norton county, Kansas, for his services as such officer, which claim was allowed in the total sum of $65, being $22.50 for attendance on the jury of twelve men who were impaneled to try the case of the State against Dewey and others, and his attendance upon the sitting of the court during the progress of that case, and also $35 for taking charge of and caring for two jurors who became ill during the progress of the trial, and for some other items—medicine, etc.—to such two jurors, the whole totaling the sum of $65.

"That J. F. Kennedy, one of said bailiffs, deputy sheriffs, or special officers, was allowed $70.50 upon presentation to the board of county commissioners of his voucher therefor, for attendance upon said court and for taking charge of said jury of twelve men who were sworn and impaneled to try the said case.

"That G. W. Pippinger was allowed the sum of $46.50 by said board of county commissioners upon voucher presented to it for attendance upon the court and jury under the same circumstances.

"That L. Redd, one of such special officers, was allowed $33 for attendance upon such jury and upon the court; and that A. Butler was allowed the sum of $48 for attendance upon such jury and upon the court; and that W. Sarvis was allowed the sum of $89.50 for attending upon said court and jury, being allowed the sum of $1.50 for such attendance during the daytime and $1 during the night; and that W. R. Garrison was allowed the sum of $57 for such attendance and service, being $1.50 for attending during the daytime and $1 during the night; that J. W. Graves was paid a total of $82.50 for such attendance, he being paid the sum of $1.50 for fifty-five days' attendance.

"That the board of county commissioners of Norton county, Kansas, allowed to these various persons, as mileage traveled in making service of summons upon jurors, the sum of $147.50.

"That the total amount allowed them for making service upon such jurors was $80.50.

"That the total amount allowed these persons as per diem as bailiffs, during the sitting of the court, was $492.50.

"The court finds that to expedite the trial it was necessary that the additional bailiffs, or under-sheriffs, or special officers of the court, should be appointed, and that the persons named and to whom fees were allowed as such bailiffs were necessarily in attendance at such trial during such term of court.

"That the trial of the defendants in that case resulted in an acquittal, and that they were discharged by order of the court from custody, and that the court at the time of making such order adjudged that Cheyenne county, Kansas, should pay all proper costs incurred on the trial of said case.

"That the fees hereinbefore set out and sued for have not been paid by Cheyenne county; that prior to the bringing of this suit Norton county, Kansas, presented its claim against Cheyenne county to the board of county commissioners of Cheyenne county for allowance, which claim was refused and denied.

"That the claim of Norton county against Cheyenne county, above referred to, was rejected by the board of county commissioners of Cheyenne county, at its October meeting, 1904."

### "CONCLUSIONS OF LAW.

"(1) The court finds that Cheyenne county is justly indebted to Norton county, for jurors' fees paid out and expended by it in the trial of the State of Kansas against Chauncey Dewey and others, in the sum of $2762.10.

"(2) That Cheyenne county is justly indebted, and there is due from it to Norton county, for per diem of the special officers who served as deputy sheriffs, or special court officers, at the trial of said case, the sum of $492.50.

"(3) That Cheyenne county is justly indebted to Norton county for moneys paid out to the special officers who served as special officers, bailiffs, or deputy sher-

iffs, in making service upon persons who served as jurors on said case, in the sum of $80.50.

"(4) That Cheyenne county is justly indebted to Norton county for the mileage of such officers necessarily traveled in making such service upon such jurors in the sum of $147.50.

. "(5) That the plaintiff is entitled to recover from the defendant in this action the total sum of $3482.50.

"(6) The court further finds that there should be deducted from the amount found due the sum of $17.25, and that the judgment should stand as $3465.25.

"(7) That said judgment should draw interest from this date at the rate of six per cent. per annum.

"(8) That the item of fees for which the plaintiff sues in this case was paid by Norton county, Kansas, on the 12th day of July, 1904. [The defendant excepts to each and every part of the findings of fact as made and stated by the court, and to each and all of the conclusions of law drawn therefrom.]

"It is thereupon considered, ordered and adjudged by the court that the plaintiff do have and recover of and from the defendant the sum of $3465.25, together with·interest thereon at the rate of six per cent. per annum from the date of this judgment, together with all costs legally chargeable against said defendant, to all of which judgment and order the defendant objects and excepts." ·

To reverse the judgment Cheyenne county brings the case here, and Norton county, by a cross-petition in error, alleges error in the sustaining of a demurrer to certain causes of action.

The plaintiff in error first contends that no one of the 395 counts in the petition states a cause of action, for the reason that in none of them is there an allegation that Cheyenne county is indebted to Norton county for the amount therein alleged to have been paid out. The objection is not well taken. In the first cause of action the facts in regard to the pendency of the criminal action, the change of venue and the trial are stated generally. Then follows the allegation that a certain man named was summoned to serve, and served, as a juror, stating the number of days he attended and the

miles traveled, the sum the juror was entitled to as pay, that the clerk of the district court of Norton county made a return to the board of county commissioners of that county thereof, and that the board had audited and allowed the amount and had issued the warrant of Norton county therefor, giving the number and amount of the warrant. In each of the following causes of action from No. 2 to No. 374, inclusive, the general averments of the first cause of action are made a part thereof, and then follows a detailed statement of the summoning, attendance, mileage, amount of legal fees, return of the clerk, allowance by the board, and the issuance of the county warrant therefor, with the number and amount of the warrant. The term of court, so far as related to the jury, was as completely devoted to the trial of the Dewey case as possible, and there is no accounting or apportioning of the jury costs necessary or possible. Preceding the prayer for relief a general statement is made, with reference to each cause of action, of all the facts the absence of which in each count is the basis of the alleged insufficiency. Except as against a motion (which was not filed) to require the plaintiff separately to state and number its causes of action this cures the defect, and the demurrer to these counts was properly overruled.

Counts No. 375 to 387 set forth claims of bailiffs, or deputy sheriffs, and were of the class of burdens which, as between the counties, should be borne by Cheyenne county. (*Shawnee Co. v. Wabaunsee Co.*, 4 Kan. 312.) The facts upon which the claim in each of the several counts was based, with the concluding general allegations, were sufficiently set forth, and the demurrer to all of said counts, except No. 387, which was not included in the demurrer heard and decided by Judge Smith, was properly overruled. It appears that before the Honorable Charles W. Smith was elected judge *pro tem.* to try the case a demurrer to several counts of the petition, including No. 387, had been heard before Judge Geiger, and was evidently sus-

tained as to this count inadvertently, as the demurrer to all other counts of like character was at the same time overruled. The order sustaining the demurrer to counts Nos. 387, 388, 389, 390 and 391, inclusive, is reversed. These expenses for the board and care of jurors by order of the court, while such jurors were sequestered and not allowed the liberty of providing for themselves, must be borne by one of the counties, and on the authority of *Shawnee Co. v. Wabaunsee Co.,* *supra,* Cheyenne county must bear the burden.

The demurrer to counts Nos. 392 and 393 having been sustained, we affirm the order. These expenses, if incurred, were principally for room rent, beds and bedding. Norton county could not collect rent for its court-house, and room for twelve jurors should be, and usually is, provided in court-houses. The beds, towels, etc., are articles of more than temporary use, and should be supplied in the room or rooms of the court-house appropriated to such use.

Ordinarily jurymen are compensated by fees per diem and must provide for their own personal expenses. Occasions arise, however, when this rule may be departed from, especially in criminal trials when public feeling and passion for and against the accused run high, or when great interests are involved and the most impelling motives exist for prejudicing or even corrupting the jurors charged with the duty of pronouncing the verdict of guilty or not guilty. On such occasions the courts, realizing the danger of justice being thwarted, and also realizing the public importance of having not even a suspicion of any wrong attach to the verdict, are impelled to sequester the jury from the time they are impaneled until their full duty is discharged. These occasions have arisen from time immemorial, and will continue to arise, although less frequently as the higher intelligence and probity of jurors advance. With the decreasing danger of improper interference the modern tendency is toward less surveillance over juries than was formerly customary. When,

however, in the judgment of a trial court the necessity for the sequestration of a jury arises it has the inherent power so to order, and to impose upon the county where the action originates the additional expenses made necessary thereby. In the interest of economy this discretion should be exercised with caution.

It is urged with much force that none of the bailiffs, or deputy sheriffs, who summoned the jurors was entitled to compensation therefor unless a return was made upon the process showing the amount of his fees and the items thereof, and this is the plain provision of section 3062 of the General Statutes of 1901. The agreed statement of facts shows this return was not made by the deputies to whom fees were paid for such service. This wise provision of the statute is to prevent such officials from charging constructive mileage—that is, where an officer has a number of writs to serve on persons in the same or a near-by locality remote from the county-seat, it prevents a return of mileage from the county-seat on each writ. It goes to the proof of service, and compliance should be strictly required before compensation is granted. In this case, however, the sworn statement of the officer, made on a separate paper, was allowed to be substituted for the unsworn statement required to be indorsed on the writ, and the commissioners of Norton county audited, allowed and paid the claim. Moreover, it was expressly admitted in writing on the trial of this case that the officers actually performed the services for which they were paid. At the trial, then, it was not a question whether the officers should be required to furnish the statutory proof or forfeit their pay. They had been paid, and the question was whether Cheyenne county should pay for services admittedly received or whether Norton county should lose the amount paid by reason of the informality in the proof of the claims. To adopt the latter solution would be to make a statute designed to prevent wrong an effective instrument of wrong. The officers should not have been paid until they met

Cheyenne County v. Norton County.

the statutory requirement of proof.   Upon the formal admission in court, however, Norton county should be reimbursed.   In the absence of the admission the statutory proof of service should have been required, and by amended returns it may be supplied at any time.

We pause to observe that it would be the better practice and avoid confusion if county commissioners would require sheriffs to present their own bills for services rendered, and also the bills of their deputies, and of all persons to whom they have incurred proper obligations under the orders of the court.   Under the statute or under the orders of the court the sheriff incurs the obligations for the county, and should be responsible to the county for the proper exercise of the power.   The expenses are, in a sense, his official expenses, and he should collect therefor and disburse to the proper persons.

We think the trial court did not err in refusing to allow interest on the claims prior to judgment, and we have discovered no reversible error in the final trial. However, as we have held there was error in sustaining the demurrer to counts Nos. 387, 388, 389, 390 and 391, and there is no agreed statement of facts or findings of the court which determine the issues thereon, or which enable this court to determine what judgment should be entered thereon, we cannot order a correction of the judgment, but must reverse the judgment rendered and remand the case for further proceedings in accordance with the views herein expressed, and it is so ordered.   As the judgment is reversed on the cross-petition in error, the costs of this court will be taxed to the plaintiff in error.

OPINION DENYING A PETITION FOR A REHEARING
AND ALLOWING A MOTION TO CORRECT JUDG-
MENT.

The opinion of the court was delivered by

SMITH, J.: In the petition for a rehearing it is in-
ferred, from the opinion in this case, that the plaintiff
in error has been prejudiced by stipulating as to cer-
tain facts instead of putting the opposite party to the
necessity of calling a large number of witnesses to
prove such facts. Such is not the case. On the other
hand, this court and courts generally look with favor
upon such stipulations, and the better class of lawyers
spend little time in controverting irrefutable facts.
The expressions in the opinion from which' the erro-
neous impression was evidently drawn were used for the
purpose only of showing the justice of the claim of de-
fendant in error, as a reason for excusing non-compli-
ance with a formality in this: that the sheriff and his
deputies had neglected to file their unsworn statements
of their fees with the clerk of the court, as required by
statute, but, in lieu thereof, had filed their sworn state-
ments thereof with the board of county commissioners.

Again, it is said that certain fees should not have
been allowed against the county until the sheriff had
complied with the statutory requirement that such fees
could not be collected from any other source. That
statute is not applicable to a felony trial in which the
accused is acquitted and there is no finding of malice
against a prosecuting witness; besides, the judgment
of the trial court had determined the liability for
proper costs.

It is said that *Shawnee Co. v. Wabaunsee Co.*, 4 Kan.
312, was decided under a statute which has been re-
pealed and that no such statutory provision now exists.
Substantially the same provision, so far as this case
is concerned, is found in section 3057 of the General
Statutes of 1901.

The petition for a rehearing is denied.

On the motion of the defendant in error to correct the judgment it is found that the agreed statement of facts does contain this recital:

"It is further agreed that the claims set forth in the causes of action to plaintiff's petition numbered 387, 388, 389, 390, 391, 392 and 393 are for services and supplies which were actually rendered and furnished and paid for as alleged therein, and that a demurrer was sustained thereto by the district court of Cheyenne county, Kansas, upon the 6th day of December, 1905."

In our decision the ruling of the district court sustaining the demurrer to causes of action Nos. 387, 388, 389, 390 and 391 was reversed, and the stipulation in regard thereto was overlooked. The former order of this court remanding this case is revoked, and it is ordered that the case be remanded and that the judgment of the district court for the plaintiff be corrected to include the amounts claimed in counts Nos. 387, 388, 389, 390 and 391, inclusive, and when this is done that the judgment be affirmed.